UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60810-CIV-ALTMAN/Strauss

**ERIC WATKINS**,

    *Plaintiff*,

v.

**OFFICER DAVLIN SESSION**, *et al.*,

    *Defendants*.

_____/

## ORDER GRANTING MOTION TO APPEAL *IN FORMA PAUPERIS*

Our *pro se* Plaintiff, Eric Watkins, has filed a Motion for Permission to Appeal *in Forma Pauperis* (the "Motion") [ECF No. 220], challenging certain aspects of our Order Granting the Defendants' Motion to Dismiss (the "Second MTD Order") [ECF No. 216]. Because we find that one narrow portion of his appeal *may* be taken in "good faith," we now **GRANT** his Motion.

### THE FACTS

In 2015, Watkins was arrested by two police officers who believed that he had urinated in a public park. Watkins, claiming he did no such thing—but admitting that he had dumped out a bottle of his own urine in that park—sued the arresting officers, their police chief, and the city they work for, alleging a host of constitutional violations. After some protracted litigation—during which Watkins filed *three* amended complaints[1]—we granted the Defendants' Second Motion to Dismiss (the "Second MTD") [ECF No. 192] and dismissed Watkins's Third Amended Complaint (the "TAC") with prejudice, *see* the Second MTD Order.[2]

---

[1] *See* First Amended Complaint [ECF No. 47]; Second Amended Complaint [ECF No. 91]; Third Amended Complaint [ECF No. 188].
[2] We'd previously dismissed certain claims from Watkins's Second Amended Complaint without prejudice and with leave to amend. *See* Order Granting First Motion to Dismiss (the "First MTD

Watkins then filed *both* a Notice of Appeal [ECF No. 217] *and* this Motion, in which he advances three arguments. *First*, he claims we erred in granting the MTD "on [our] subjective belief finding that a one time dumping of urine from a bottle in a public park in a secluded and unpatroned area could cause a reasonable officer in the defendants' shoes to believe that plaintiff violated F.S. 877.03—disorderly conduct—and F.S. 823.01—nuisances[.]" Motion at 1 (errors in original). According to Watkins, "none of these statutes nor any case law ever previously declared such conduct, supra, a violation of these statutes and [ ] Plaintiff clearly demonstrated that such conduct, supra, does not violate these statutes," so "a reasonable officer in the defendants' shoes could not have believed that such conduct violated these Florida statutes." *Ibid.* He concludes, then, that "no arguable probable cause existed to arrest plaintiff." *Ibid. Second*, he says that we erred when we dismissed with prejudice Count V against the City and the Chief "on the finding that Plaintiff violated a court order when he amended his complaint. It is Plaintiff's claim that he did not violate any court order but complied with the order when he amended his complaint where the court allowed Plaintiff to amend the order [sic]." Motion at 4. *Third*, Watkins questions "[w]hether the court should have allowed Plaintiff to amend his complaint where Plaintiff had at a very early stage had requested the amendment deadline be extended and where the complaint was ripe for edification and amendment." *Ibid.* (errors in original). The latter two arguments are frivolous for reasons we're about to explain. Watkins's first contention, though, isn't (in our view) *so* patently frivolous as to be "not taken in good faith." 28 U.S.C. § 1915(a)(3). We thus **GRANT** the Motion and allow Watkins to proceed with his appeal *in forma pauperis*.

---

Order") [ECF No. 186] at 19–23. We'd also dismissed *with* prejudice his claims against the Lauderhill Police Department and the police chief in her *official* capacity. *See id.* at 23–24. In dismissing these two defendants with prejudice, we explained that "Sheriff's departments and police departments are not usually considered legal entities subject to suit," *id.* at 23 (quoting *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)), and that the "official-capacity claim against the Chief [was] duplicative of [Watkins's] claim against the City," *id.* at 24.

2

## THE LAW

Motions to proceed *in forma pauperis* ("IFP") on appeal are governed by the strictures of 28 U.S.C. § 1915 and Rule 24 of the Federal Rules of Appellate Procedure. As relevant here, a proper motion to proceed IFP on appeal requires (1) an affidavit that (2) shows in detail the party's inability to pay or to give security for fees and costs, (3) claims an entitlement to redress, and (4) lays out the issues the party intends to present on appeal. *See* FED. R. APP. P. 24(a)(1).

But, as the Eleventh Circuit has explained, "the pauper's affidavit should not be a broad highway into the federal courts." *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984) (cleaned up). "Indigence does not create a constitutional right to the expenditure of public funds and the valuable time of the courts in order to prosecute an action which is totally without merit." *Ibid.* And "these considerations counsel that the district court must have wide discretion in denying a motion to proceed as a pauper when the complaint is frivolous." *Ibid.*; *see also* 28 U.S.C. § 1915(e)(2) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that— . . . (B) the action or appeal—(i) is frivolous or malicious[.]").

"An appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3); *accord* FED. R. APP. P. 24(a)(3)(A). "A party demonstrates good faith by seeking appellate review of any issue that is *not frivolous* when examined under an objective standard." *Ghee v. Retailers Nat'l Bank*, 271 F. App'x 858, 859 (11th Cir. 2008) (citing *Coppedge v. United States*, 369 U.S. 438, 445 (1962) (emphasis added)). "An issue is frivolous when it appears that the legal theories are indisputably meritless. In other words, an IFP action is frivolous, and thus not brought in good faith, if it is without arguable merit either in law or fact." *Ibid.* (cleaned up). "[A]rguable means capable of being convincingly argued." *Sun v. Forrester*, 939 F.2d 924, 925 (11th Cir. 1991) (cleaned up).

## ANALYSIS

Watkins has submitted an affidavit that (1) details his inability to pay the relevant docket fees, (2) affirms his belief that he's entitled to redress, and (3) presents the issues he intends to raise on appeal. *See generally* Motion. While the second and third issues Watkins intends to present on appeal are (in our view) frivolous, the first *may* not be. We'll address them in reverse order.

*First*, we find Watkins's suggestion that we "should have allowed [him] to amend his complaint where [he] had at a very early stage had requested the amendment deadline be extended and where the complaint was ripe for edification and amendment," Motion at 4 (errors in original), utterly baseless. As we've said, we gave Watkins permission to amend his complaint *three* times. *See* First Amended Complaint [ECF No. 47]; Second Amended Complaint [ECF No. 91]; Third Amended Complaint [ECF No. 188]. While the Federal Rules suggest that we "freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), no rule requires us to allow a *fourth* amendment—three-and-a-half years into the litigation—that's likely to be futile. "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). And any amendment *would have* been futile here because (as we explained in our prior order) Watkins's arresting officers were entitled to qualified immunity, *see* Second MTD Order at 8–17—which dooms his *Monell* claim under *any* theory. That's because a § 1983 plaintiff who pursues municipal liability under *Monell* "must allege facts showing: '(1) that *his constitutional rights were violated*; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.'" *Guerra v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) (emphasis added) (quoting *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)). Without a constitutional violation, then, Watkins could never successfully plead a *Monell* claim. And Watkins cannot "convincingly argue" otherwise. *Sun*, 939 F.2d at 925.

*Second*, Watkins's claim that he "did not violate any court order but complied with the order when he amended his complaint," Motion at 4, is frivolous. In our First MTD Order, we warned Watkins that, "since he has 'concluded' his discovery—and given the assurance he gave the Court in his Motion for Leave to Amend—he will not be permitted to add new counts or defendants. He may simply take his best crack at properly alleging the counts he has already advanced against the Defendants who now remain." First MTD Order at 25. Despite this clear admonition, Watkins raised an entirely new claim in his TAC: his final-policymaker *Monell* claim. *Compare* TAC ¶¶ 64–70 (asserting a final-policymaker *Monell* claim), *with* SAC ¶¶ 16, 61–67 (setting forth a *Monell* claim under a failure-to-train theory). In the Second MTD Order, we explained that, for two reasons, the final-policymaker claim was a "new claim" Watkins wasn't permitted to plead. *One* (we said), the elements of Watkins's new final-policymaker claim are materially different from the elements of the failure-to-train claim he'd advanced before. As we wrote:

> [H]is new final-policymaker claim requires proof of different elements—and is subject to different defenses—than the old failure-to-train claim he now appears to have abandoned. *Compare Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("To satisfy the statute [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." (cleaned up)), *and ibid.* ("Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (cleaned up)), *with Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (noting that, to state a final-policymaker claim, "a plaintiff (1) must show that the local government entity, here the county, has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue").

Second MTD Order at 19. And Watkins does absolutely nothing—either in the MTD briefing or in this Motion—to rebut our conclusion that failure-to-train and final-policymaker claims are, in fact, two different claims. He's thus forfeited any such argument. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court sua sponte [only] in extraordinary

circumstances."); *Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived.").

This difference between the two claims brings us to the *second* problem with Watkins's second argument. As we explained in our Second MTD Order:

> This new claim would thus require the parties to take *a great deal of* additional discovery—something Watkins already assured us he *wouldn't* need, *see* Motion for Leave to Amend [ECF No. 86] at 2 (Watkins informing us that he'd 'concluded' his 'discovery investigation'), and which we wouldn't have allowed in any case, principally because discovery closed *more than two years ago*, *see* Amended Order Setting Trial [ECF No. 97] at 1 (closing discovery on August 10, 2020).

Second MTD Order at 20. Watkins hasn't explained why he should've been permitted—more than two years after the close of discovery and after four complaints and two motions to dismiss—to turn back the clock and restart the whole discovery process. Nor could he have. "[D]istrict courts," the Eleventh Circuit has repeatedly said, "enjoy broad discretion in deciding how best to manage the cases before them." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997); *see also Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) (noting that the Eleventh Circuit "accord[s] district courts broad discretion over the management of pre-trial activities, including discovery and scheduling"); *United States v. McCutcheon*, 86 F.3d 187, 190 (11th Cir. 1996) (noting the "broad discretion which is allowed a trial court to manage its own docket"). In sum, Watkins's claim that he "did not violate any court order but complied with the order when he amended his complaint," Motion at 4, is "indisputably meritless," *Ghee*, 271 F. App'x at 859—and thus cannot justify his IFP appeal.

*Third*—and this is the one we cannot reject as frivolous—Watkins challenges our view that the officers had arguable probable cause to arrest him. An officer has arguable probable cause when a "reasonable officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997). "The existence of arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Longino v. Henry Cnty., Ga.*, 791 F. App'x 828, 832 (11th Cir. 2019) (cleaned up). Whether an officer had "arguable probable cause" depends on the totality of the circumstances. *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1294 (11th Cir. 2018) (citing *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)). And, notably for our purposes, "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Second MTD Order at 10 (first quoting *Bailey v. Bd. of Cnty. Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992); and then citing *United States v. Saunders*, 476 F.2d 5, 7–8 (5th Cir. 1973) ("Since the BNDD agents had probable cause to arrest appellant for marijuana possession, the arrest and the incident search were valid, and the agents' reliance on the harboring or concealing charge did not affect this result.")).

Our officers arrested Watkins on "a charge of exposure of sexual organs," TAC ¶ 6, in violation of Fla. Stat. § 800.03, TAC ¶ 55. As we explained in our First MTD Order, however, the officers failed to articulate arguable probable cause to support that arrest because "§ 800.03 requires some 'lascivious' conduct—which, in turn, means that a defendant doesn't violate § 800.03 unless he exposes himself with the intent to do something *sexual*," First MTD Order at 12–13, and the law counsels that "there's nothing about urinating in public that's innately sexual," *id.* at 14. In the Second MTD, by contrast, the Defendants pointed to two *other* statutes that, they said, justified the arrest in this case. *See* Second MTD at 13 ("And even assuming Plaintiff's story that he did not physically urinate in public, but simply poured a bottle of expressed urine onto the ground . . . there was still at

7

least arguable probable cause for *other* crimes, including breach of the peace, pursuant to § 877.03, Fla. Stat., and/or creating a public nuisance under § 823.01, Fla. Stat."). In our Second MTD Order, we agreed with the Defendants and held that "a reasonable officer in Session's or Vogt's shoes could've believed that dumping one's urine out in a public park is the sort of 'act[ ] as [is] of a nature to . . . outrage the sense of public decency[.]'" Second MTD Order at 15 (quoting FLA. STAT. § 877.03). We also found "it reasonable for an officer to conclude that the particular nuisance Watkins admittedly engaged in would—as the statute proscribes—'tend to annoy the community.'" *Id.* at 15–16 (referring to FLA. STAT. § 823.01).

Watkins now argues that "none of these statutes [§ 877.03 or § 823.01] nor any case law ever previously declared such conduct [dumping out a bottle of urine in a public park] a violation of these statutes and [ ] Plaintiff clearly demonstrated that such conduct, supra, does not violate these statutes, supra. Hence a reasonable officer in the defendants' shoes could not have believed that such conduct violated these Florida statutes, supra. Hence no arguable probable cause existed to arrest plaintiff." Motion at 1. In Watkins's view, then, we erred in dismissing his claims based "on [our] subjective belief finding that a one time dumping of urine from a bottle in a public park in a secluded and unpatroned area could cause a reasonable officer in the defendants' shoes to believe that plaintiff violated F.S. 877.03—disorderly conduct—and F.S. 823.01—nuisances[.]" *Ibid.*

Of course, Watkins has the standard exactly backwards. In the context of qualified immunity, the question isn't whether, at the time of the arrest, the law was clear that the officers *could* arrest the plaintiff; the question, rather, is whether the plaintiff can show that the law clearly established they *couldn't*. *See, e.g.*, *Eloy v. Guillot*, 289 F. App'x 339, 346 (11th Cir. 2008) ("[T]he defendant must have fair notice of his conduct's unconstitutionality which derives from one of the following sources: (1) the obvious clarity of constitutional or statutory language; (2) broad holdings or statements of principle in case law that are not tied to particularized facts; or (3) fact-specific judicial precedents that are not

8

fairly distinguishable."); *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) ("If, interpreting the evidence in the light most favorable to the plaintiff, the court concludes that the defendant was engaged in a discretionary function, then the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity."). Still, we don't think Watkins's position—*viz.*, that a reasonable officer *wouldn't* have believed Watkins's conduct violated either statute—is "indisputably meritless." *Ghee*, 271 F. App'x at 859. So, we'll allow him to proceed *in forma pauperis* on appeal.

\*   \*   \*

After careful review, therefore, we **GRANT** the Plaintiff's Motion for Permission to Appeal *in Forma Pauperis* [ECF No. 220].

**DONE AND ORDERED** in the Southern District of Florida on February 28, 2023.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Eric Watkins, *pro se*